## GROTGEN *vs.* GROTGEN.

*In the matter of the Estate of* EMIL GROTGEN, *deceased.*

THE intestate and the party claiming to be his widow, lived together as man and wife for four years, and had three children ; there was open profession of the marital relation, general reputation and reception amongst their associates, intimates and relatives, as husband and wife—*Held*, that, notwithstanding the claimant, who voluntarily submitted to an examination under oath, on being called by the opposing party, admitted there had been no ceremonial marriage, there were facts sufficient to raise a presumption of a marriage in fact.

A. B. TAPPAN, *for the Public Administrator.*
L. E. BULKELY, *for the Widow.*

THE SURROGATE.—The decedent Grotgen having died intestate, the petitioner Ellen Grotgen claims as his widow the property directed by the statute to be set apart on the taking of the inventory, for the benefit of the widow and infant children of the deceased. The decedent's brother having controverted the fact of marriage, evidence has been taken, and it now remains for me to determine whether there is sufficient proof of a marriage in fact, there being no allegation or evidence of a ceremonial marriage. Several witnesses have been examined, and they show that Grotgen and Ellen occupied the same apartments, cohabited together and were reputed to be living as man and wife. During this connection which continued more than four years, three children were born, only one of whom survives. The couple were visited by persons of respectability of both sexes, in whose presence they addressed and treated each other as husband and wife. On one occasion, Grotgen, conversing with a

friend on the subject of marriage, said " well, I am perfectly satisfied with my wife ; I have a most excellent wife and we live together as happily as two persons could well be." It appears also, that Grotgen's brother, who now contests the claim of Ellen, at one time boarded at Grotgen's house several weeks, and also visited there occasionally with his wife. This brother declares that Grotgen in 1852, boarded some five months at a hotel in Barclay Street, and had a room and sometimes slept there ; with this exception, there is nothing to rebut the presumption of marriage arising from the testimony. I do not perceive that any question was raised as to the honorable character of this connection during the intestate's life-time. There was an intercourse of several years, the birth of children, open profession of the marital relation, general reputation, and reception among their associates, intimates and relatives. No previous unchastity is alleged, nor subsequent infidelity. The intercourse was constant and unbroken. Its legality and propriety are for the first time questioned on the intestate's death, when the brother intervenes to dispute the rights of those whom the decedent recognized as his wife and child. To justify this position, he has not called a single witness except Ellen, the claimant, who having voluntarily submitted to an examination at his instance, must be taken as a competent witness. Her story is a plain and candid one, and she does not indicate any shrinking from the truth. She admits without prevarication that she was never married ceremonially. Her story is, that she first became acquainted with Grotgen in the year 1850; he paid his addresses to her eight or nine months, but had no intimacy or connection with her until the 12th day of March, 1851, when Grotgen having agreed with her that if she would live with him, they should be man and wife, the same as if a ceremony had been performed, she agreed then to become his wife, and commenced a cohabitation which continued from that time until his decease, July 31, 1855. She says that Grotgen often referred to their marriage in 1851, and spoke of having a ceremony at some future time,

alluding to circumstances in connection with his affairs in Europe, as a reason for a postponement of the ceremony. As to the character of their intercourse, she testifies, that it was as husband and wife, and says " we went out into the street and walked arm-in-arm, we went to public places of amusement, we had friends call upon us, and we called upon them. He hired rooms and furnished them for us to live together in, during all this time. He always slept at the rooms with me when in town, except a few nights when on a spree. He named our daughter himself after much conversation between us on the subject. He was very much attached to the child, and always called her his little daughter." This is the whole proof, and in my judgment, it makes out a *prima facie* case of a marriage in fact. The presumption of law under such circumstances of cohabitation, reputation, and publicity, is against a meretricious connection. There is no token of clandestinity as to the circle of their acquaintances in New York, while it is impossible for us to say that there were no reasons existing why he should desire his marriage not to be made known in Europe. The absence of a ceremony does not invalidate the contract, though it is always a proper circumstance to be taken in view by the court, in judging as to the real character of the intercourse between the parties. If, however, parties choose to marry by private agreement, without the interposition of a magistrate or Christian minister, the law does not forbid it. They run great risks in having the nature of the tie suspected, doubted or denied, and deprive themselves of the best and highest proof of their compact, but still the only point after all is whether the contract of marriage existed, and that may be established by the kind of proof applicable to all contracts. From the light afforded by the evidence now before me, I am led to the conclusion that the party claimant was the wife of Grotgen, and is entitled to all the rights of his lawful widow. The appraisers must, therefore, set apart for her use and that of the minor child, the articles specified in the statute.