## ESTATE OF A. H. TITCOMB.

### No. 4088—Dec. 1, 1873.

MARRIAGE.—FACTS showing an actual marriage, though unaccompanied by any formal ceremony.

A *bona fide* agreement to live together as husband and wife, followed by a joint residence, a community of funds, the bringing up of children, and a holding out to the community at large of honorable relations as married people, with no touch of illicit lewdness in the lives of the parties, must be held to constitute a married *status,* even though there has been no formal solemnization of the contract.

Construing sections, C. C., 55-57, 68.

HOMESTEAD.—Where property claimed as homestead is worth more than $5,000, and the widow continues to occupy it after return of inventory, she should pay rent for the use proportionally to its value in excess of the $5,000; and the rent proportioned upon such excess in value should be charged against her in her account as administratrix.

CLAIM AGAINST INSOLVENT ESTATE.—INTEREST.—There was a mortgage claim against the estate presented and allowed, in which compound interest had been included, according to the terms of the mortgage. This claim, the widow paid without order of the Court, *in full;* it appears that the estate is insolvent.

HELD, that the widow cannot be allowed a credit for her payment for any interest over and above ten per cent., although in a foreclosure suit, the bank might have recovered the full interest.

Construing sections, C. C. P., 1474–86–1494; statute 1861–637.

*Selden S. Wright, M. B. Blake,* for creditors.

*Geo. F. Sharp* and *J. C. McCeney,* for widow.

Elizabeth Titcomb petitioned for a homestead to be set apart to her as the widow of deceased. Creditors of deceased resist, claiming that petitioner was not the wife and is not the widow of deceased.

The petitioner came to this State in about 1854, as Elizabeth Maguire, a single woman, and obtained employment in a laundry. While there she became acquainted with A. H. Titcomb. He proposed marriage to her, which was accepted by her; and he then proposed to furnish a house, they to reside together, and she take care of the house and rent furnished rooms to lodgers; this was accepted by her, and they entered upon those relations. The same relations continued until his death in 1870. They resided together as husband and wife; he took her to places of amusement; rode out with her; introduced her to his friends as his wife; and so far as his domestic life was known, they were regarded as married people. Three children were born to them; two died very young; the other survives, and is a young woman of about eighteen years. This child bears Mr. Titcomb's name, was spoken of by him to his friends as his daughter, and was educated by him, and christened with his consent. She appears to be a reputable young woman, and is somewhat accomplished. Mrs. Titcomb has the reputation of an honest woman. Some years ago he purchased a lot on O'Farrell street with funds earned by himself in business and by Mrs.

Titcomb in renting rooms—all the funds being used in common.   He built a house upon the lot, and the family, consisting of himself, Mrs. Titcomb and the daughter, resided there together until his death; she continuing to rent furnished rooms.   Mr. Titcomb has held public offices of trust in this city.   No ceremony of marriage by clergyman or officer was performed.

From the foregoing facts, I am of opinion that the petitioner was the lawful wife and is the widow of deceased, and that the child was born in wedlock and is legitimate.   Under the Constitution of this State, marriage is a civil contract, and may be entered into by parties, as other contracts, without the intervention of a ceremony by a third person.   In the statute concerning marriages, there is no provision that any marriage not in conformity to the act shall be void.   Persons competent to contract marriage may make that contract between themselves.

If a man and woman live together under a contract of marriage, not for lewdness, but for honesty, and conduct themselves honestly as husband and wife, I think that the law throws around them and their offspring the shield of marriage and legitimacy, and the only risk that is taken is the criticism which is invited from a community jealous to protect its purity.

> *Trumalty* v. *Trumalty*, 3 Brad., 369;
> *Groetzen* v. *Groetzen*, 3 Brad., 373.

*J. C. McCeney*, for administratrix.

*M. B. Blake*, *F. J. French* and *Steuart S. Wright*, for creditors.

The final account of Elizabeth Titcomb, administratrix, came on for settlement, exceptions having been taken by creditors to various items.

Deceased left a residence, which had been occupied by himself and family, but had not been declared a homestead. The widow made application to have the property set apart to the family as a homestead.   On proceedings had on that application, the residence was appraised at eleven thousand

dollars. The Court ordered the property sold, which was done, and by order five thousand dollars of the proceeds were set apart in lieu of a homestead. After the inventory was returned, the widow continued to occupy the residence until the sale. A fair rental for the premises is ninety dollars per month. At the time of the death of decedent, he was indebted to the Odd Fellows' Savings Bank, payment being secured by mortgage on the residence, a claim for which was duly presented and allowed. This debt bore interest at the rate of one per cent. per month, compounded monthly. After the sale, the administratrix, without order of the Court, paid the debt to the Odd Fellows' Savings Bank in full, according to the terms of the note. The estate is insolvent, but a small percentage remaining to be paid to general creditors.

By the COURT: The widow was entitled to occupy the residence, as she had a right to have it, or the sum of $5,000 out of its proceeds, set apart; but the value of its use, in excess of $5,000, should be accounted for as assets of the estate. She should, therefore, be charged with a sum per month bearing the proportion to ninety dollars per month, which the difference between $5,000 and the gross value bears to the gross value. She paid the full amount of the debt to the Odd Fellows' Savings Bank. Under the statute, the estate being insolvent, the interest was reduced to ten per cent. per annum. The statute provides for an order to be made upon the settlement of the final account, for the payment of the debts of the estate. If an administratrix pay a debt before the order, she takes the risk that there are funds of the estate sufficient to pay the debt, properly applicable thereto, and that the settlement of her account will display that sufficiency. It is true, that if the Bank had foreclosed, it might have recovered the full interest; but we are dealing with probate proceedings, and must be governed by the statute concerning the same. The administratrix must be charged with the difference between ten per cent. per annum and the gross amount paid for interest.